## McClure's Estate; Elizabeth Township's Appeal.

1. A school district resolved to pay bounties to "*volunteers*." Associations were formed in the township under the 23d section of the Act of Congress of March 3d 1865 and the provost-marshal's regulations, and they put in recruits. The treasurer of the school district's bounty fund paid bounty to these recruits. *Held*, that the payment was properly made.

2. The recruits under the Act of Congress, &c., and the resolution of the school directors were "volunteers."

3. The fact that the men were put in for citizens who were drafted did not detract from their standing as "*volunteers*."

4. The only operation of the Act of Congress was that when a member of the association should be drawn, the general credit would then enure to the particular benefit of the association, thus securing its drafted member from service as the reward for procuring the volunteer.

November 11th and 12th 1869. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS. JJ.

Appeal from the Orphans' Court of *Allegheny. county* : No. 121, to October and November Term 1869.

The appeal in this case was by Elizabeth Township, Allegheny county, from the decree of distribution of the estate of Alexander McClure, deceased, in the hands of his executors. The facts in the case, as appeared by the report of Thomas MacConnell, Esq., the auditor, are as follows :—

On the 18th of February, 1865, the Board of school directors of the district composed of Elizabeth township, resolved " to borrow a sum of money, not exceeding thirty thousand dollars, for the purpose of paying volunteers to fill the quota of Elizabeth township, under the late call of the President of the United States, for which the board will issue certificates of indebtedness payable as soon as the Acts of Assembly will permit, and pledging the faith of said township for their payment," &c. They appointed Alexander McClure, the decedent, treasurer of the bounty funds, and he was directed to pay $300 to each " volunteer" credited to the township. A large portion of the money was raised by loan and passed into his hands. Recruits could not be procured for $300 each, and to make up the difference, a large amount of money was contributed by individuals in the township ; this also was paid to McClure, as treasurer of that fund. There were thirty-five men put in, to whom

[McClure's Estate.]

Mr. McClure paid $300 each of the funds raised by the loan of the school directors, making in all $10,500.

The 23d section of the Act of Congress of March 3d 1865, provided:—

" That any person or persons, enrolled in any sub-district, may, after notice of a draft, and before the same shall have taken place, cause to be mustered into the service of the United States, such number of recruits, not subject to draft, as they may deem expedient, which recruits shall stand to the credit of the persons thus causing them to be mustered in, and shall be taken as substitutes for such persons, or so many of them as may be drafted, to the extent of the number of such recruits, and in the order designated by the principals at the time such recruits are thus as aforesaid mustered in."

The regulations of the provost marshal general provided:—

" 1. In order that credit may be given to the sub-district for the recruits furnished, at the time they are mustered in, and the draft made only for the deficiency remaining after crediting these and other recruits, it is necessary that all the members of the association shall belong to the same sub-district.

" 2. Previous to the commencement of the draft, the association will furnish the provost-marshal of the district a list of the names of its members, designating their order, and numbering them accordingly, which list will not be altered or increased after the drawing shall have commenced.

" A list of the recruits furnished by such association shall be kept by the provost-marshal, to be numbered in the order in which they are enlisted.

" When the draft has been made, the recruit standing at the head of the list will be taken as the substitute of the first man drafted, who belongs to the association; the recruit standing second on the list will be taken as the substitute of the second man drafted, and so on until the list of recruits is exhausted by drafted men who belong to the association, or until all the members of the association who have been drafted are exempted, in case a sufficient number of recruits has been furnished by the association to exempt that number.

" Where the number of recruits furnished by an association exceeds the number of men drafted from such association, the excess, though credited to the sub-district, will create no claim for the exemption of any person whomsoever.

" Members of associations, who secure exemption under the 23d section aforesaid, are exempt from that draft, but are liable to be drafted on future calls.

" Recruits furnished by associations, and taken as substitutes for drafted men who are members of the association, will be credited,

at the time of muster in, to the sub-district to which the association belongs."

Under the act and the regulations, three associations were formed in Elizabeth township. These associations caused five men to be mustered to the credit of Elizabeth township, who were included in the thirty-five before spoken of. The school board objected to the payment of $300 out of their funds to each of these five men as being unauthorized, and they claimed to recover the amount so paid, $1500, from the decedant's estate; on the ground that the resolution of the board contemplated payments to "volunteers," not to substitutes, and that the men furnished through the associations were substitutes.

The auditor took a large amount of testimony and made an exhaustive report, both as to the facts and the law. Amongst other things he reported:—

"It is proved that men put into the service by such associations as those in question here, were not treated by the recruiting officers, either on the muster-in rolls or in any other respect, as substitutes, but were treated in every respect as ordinary recruits. But the Act of Congress under which these associations were formed, declares expressly that the recruits mustered into the service by the associations, shall stand to the credit of the persons causing them to be mustered in, and shall be taken as *substitutes* for such persons, or so many of them as may be drafted, to the extent of the number of such recruits, and in the order designated by the principals at the time such recruits were mustered in." * * *

"In this case, Elizabeth township offered the bounty on the 18th of February 1865, and the five men in question were not put in until some time afterwards. There was then an offer on one side to pay, and its acceptance on the other, by the putting in of the substitutes; and this I think amounted to a contract to pay, which could be enforced against the township, and if it could, Alexander McClure was right in paying the money upon it.

"But it is said that the money which the school directors agreed to raise was expressly to pay bounties to volunteers. It is true that it is the word "volunteers" that is used in the resolution, but it is equally true that it is the word "volunteers" that is used in the first section of the Act of 25th of August 1864, authorizing the school directors to raise money to pay bounties, and that the very money, which by the first section they are authorized to raise specifically to pay bounties to volunteers, they are authorized by the 3d section to pay for bounties to persons putting in substitutes, or to substitutes themselves, when the principals have not paid them. The word volunteers in the Act of Assembly covers as well those who volunteered to pay money to others to go into the service, as those who volunteered to go in themselves, and I cannot see why it

should have a narrower signification in the resolution of these school directors. The great object of the school directors and of the people whom they represented, was to get the quota filled so as to escape the draft, and it made little difference to them whether it was filled by persons volunteering to go into the service themselves, or to pay substitutes for going in. The one was as effective for filling the quota and avoiding the draft as the other." * · *

"In short, the auditor thinks that Mr. McClure paid the bounty money for these five men properly, and that the claim of the school directors to recover it from his estate cannot be maintained."

Exceptions to the Auditor's report were taken by the school district; they were overruled by the court and the report confirmed. The township appealed, and in several exceptions assigned the confirmation of the report for error.

*C. C. Taylor* (with whom were *R. & S. Wood*), for appellants, cited Mifflin Township *v.* Learn, 3 P. F. Smith 180.

*T. Ewing* (with whom was *J. Edmundson*), for appellees.

The opinion of the court was delivered, November 15th 1869, by
AGNEW, J.—The result at which the learned auditor arrived was correct, though he yielded too much in admitting that the five men put in by the three associations under the provisions of the Act of Congress of March 3d 1865, could be looked upon in no other light than as substitutes. They were volunteers when enlisted and when the bounties were paid. They became substitutes only in the event that members of the association were drafted. The Act of Congress expressly provided that they should be put in before the draft, and the regulations of the provost marshal general, made under the law, provided that they should be credited to the sub-district to which the associations belong; and prescribed the order in which they should become substitutes for the members of the association, if any should be drafted.

That the recruits themselves were volunteers is beyond doubt. They enlisted voluntarily and not in place of any one. The government recognising that fact paid them a bounty as volunteers, permitted them to select their own regiments and mustered them in at once before the draft. The fact that they were procured by the associations to enter the service does not detract from their own character as volunteers; nor is this character changed by the subsequent draft of members of the association, and their then standing as substitutes of the members drawn. This is simply the reward offered by the government to the association for its service in procuring the volunteers. Being in fact volunteers they were credited generally to the sub-district, and would stand as a general

credit if none of the members of the association should be drawn. The only operation the Act of Congress had, was, when a member of the association should be drawn, to cause the general credit then to enure to the particular benefit of the association procuring the volunteer, thus screening its drafted member from service, as the reward of the association for its service in procuring the volunteer. These five men being volunteers when the bounty was paid, the time of the passage of the Act of Congress can make no difference. There was no error in allowing the estate of McClure the credit for their payment. This renders the other question as to the amount stated of no importance.

Decree affirmed.